**ORIGINAL**

# In the United States Court of Federal Claims
No. 17-1142C

(Filed: July 9, 2018)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **AUSTIN B. CAMPBELL,** ) | Military pay case; entitlement to retirement |
| ) | pay; service as an Army reservist; |
| **Plaintiff,** ) | jurisdiction; computation of retirement |
| ) | points |
| **v.** ) | |
| ) | |
| **UNITED STATES,** ) | **FILED** |
| ) | |
| **Defendant.** ) | **JUL - 9 2018** |
| ) | |
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* ) | U.S. COURT OF FEDERAL CLAIMS |

Austin B. Campbell, *pro se*, Euless, Texas.

Daniel S. Herzfeld, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. of counsel was Major Danel Mazzone, Judge Advocate, Litigation Attorney, United States Army Legal Servies Agency.

## OPINION AND ORDER

LETTOW, Judge.

This military pay case is before the court on defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") or, in the alternative, for judgment on the administrative record under RCFC 52.1(c). Plaintiff, Austin Campbell, seeks retirement pay related to his service first on active duty in the United States Army and later in the Army Reserve. For the reasons set out below, the court grants the government's motion to dismiss for lack of subject matter jurisdiction and, in the alternative, grants its motion for judgment on the administrative record.

## BACKGROUND

Mr. Campbell was commissioned as an officer in the United States Army Reserve subsequent his graduation in June 1962 from the United States Army Reserve Officer Training

7012 3460 0001 7791 7982

Corps at Ohio State University. Compl. ¶ 5; AR 734.[1] He served on active duty in the Army until 1967. Compl. ¶ 5; AR 543. After 1967, Mr. Campbell served in the Army Reserve, including sporadic periods of active duty, until 1983. *See* AR 3, 90. On July 14, 2000, Mr. Campbell turned 60 years old. Compl. ¶ 5. In August 2004, he requested reserve retirement benefits from the United States Army Reserve Personnel Center, providing a variety of documents relating to his service. AR 161. The administrative record does not include the Army's response to this request.

Retirement benefits are available under 10 U.S.C. §§ 12731-12732 to those reservists who served in the armed forces and who have reached the age of 60 after having earned a minimum of 50 points each year for at least 20 years of service. *See* Army Regulation 140-185, ¶¶ 1-7;[2] 10 U.S.C. § 12731(a), (f); AR 59. Members of the armed forces earn one point for every day of active or full-time service; reserve members earn 15 points yearly for membership. 10 U.S.C. § 12732(a)(2)(A), (C). Thus a year spent in full-time service would result in an individual earning 365 points for that year. Compl. ¶ 26. There are multiple ways for reservists to earn points, including serving in a reserve component, attending a drill or formal instruction, or performing funeral honors. *See* 10 U.S.C § 12732(a)(2).

In April 2014, Mr. Campbell requested that the Army Board for Correction of Military Records ("Army Board" or "Board") amend his records in light of "numerous errors and omissions" in the record of his service. AR 89. On May 15, 2014, the Board informed Mr. Campbell that it could not consider his application until he had "exhausted all administrative remedies," and in that regard to contact the United States Army Human Resources Command ("HR Command"). AR 88. The HR Command, which is responsible for maintaining retirement records,[3] first received documents and records from Mr. Campbell on May 27, 2014. AR 9. Over the next four years, the HR Command recalculated Mr. Campbell's retirement points on three different occasions;[4] its last recalculation was produced on February 27, 2018 ("2018 Statement"). *See* AR 3, 14, 888.

---

[1]"AR" refers to the administrative record filed on March 19, 2018. Mr. Campbell maintains that the administrative record omits thirteen significant documents. *See* Pl.'s Suppl. Compl.¶ 2, ECF No. 15. The government responds that twelve of the thirteen documents are included in the administrative record. *See* Def.'s Mot. to Dismiss and Mot. for Judgment on the Administrative Record ("Def.'s Mot.") at 8, ECF No. 18.

[2]Army Regulation 140-185 is available at: https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/r140_185.pdf (last visited July 5, 2018).

[3]*See* https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/r140_185.pdf (last visited July 5, 2018).

[4]An accounting of Mr. Campbell's retirement points was prepared by HR Command on October 30, 2014 ("2014 Statement"), AR 14, and on February 12, 2015, HR Command again recalculated Mr. Campbell's retirement points ("2015 Statement"), AR 3. Notably, in the 2015 Statement, the HR Command made several other changes to Mr. Campbell's retirement

These relatively recent requests by Mr. Campbell for relief were preceded by requests made throughout his military career and thereafter to correct alleged inaccuracies in his military records as well as in his pay and allowances. *See* Compl. ¶ 9.[5]  Although Mr. Campbell's complaint currently before the court was filed on August 23, 2017, it reflects a summary issued in 1982 of his retirement points concerning his Army career from June 8, 1968 to June 7, 1982; *see* Compl. ¶¶ 5, 8-9, 14; AR 29.  In alleging his claim, Mr. Campbell also relied on the HR Command's 2014 Statement. *See* Compl. ¶ 26.  In a supplemental complaint, submitted after the filing of the administrative record on March 20, 2018, Mr. Campbell acknowledged the HR Command's 2018 Statement, which recognized that he had achieved a minimum of at least 50 points in each of 18 years of service, 2 years short of the 20 needed to be eligible for retirement benefits.  Pl.'s Suppl. Compl. ¶ 3.

The parties agree that Mr. Campbell's service qualified towards retirement benefits from June 8, 1962 to June 7, 1980.  Compl. ¶¶ 6-7, 9-11, 14, 16, 19; AR 888.[6]  Two immediately subsequent years are at issue.  Mr. Campbell contends that he earned more than 50 points in each of the two years between June 8, 1980 and June 7, 1982, and thus netted over 50 points for 20 years to qualify for retirement benefits. *See* Compl 17-19, 22.  He claims that the administrative record does not reflect several short tours of duty he undertook during the period between June 8, 1980 and June 7, 1981.  Compl. ¶¶ 17, 18.  The 2018 Statement noted 44 points in that period. AR 888.  Mr. Campbell further alleges that several short tours of duty during the period from June 8, 1981 to June 7, 1982 were also not included in the record.  Compl. ¶¶ 19, 22.  The 2018 Statement reported that Mr. Campbell had earned 32 points during that period.  AR 888.  Despite the deficiency in points for these two years, Mr. Campbell avers that he "is entitled to the retirement pay of a major with over 18 years of service or one half of the current rate."  Compl. ¶ 26.  In response, the government contends that "the Army Human Resources Command was unable to verify any additional points" and that Mr. Campbell thus does not meet the criteria for reserve retirement.  Def.'s Mot. at 8.  In effect, Mr. Campbell asks the court to recalculate the points HR Command determined he earned in the 2018 Statement.  Compl. ¶ 26.

Mr. Campbell also claims that because "the Army [in the 2018 Statement] acknowledges that [he] had accrued at least 18 years qualifying service, it had the duty by Army Regulation to offer [him] the opportunity to be retained to complete 20 years of qualifying service."  Pl.'s Suppl. Compl. ¶ 3.  While maintaining that he never received notification in 1984 of his discharge, *see* AR 613, Mr. Campbell contends that receipt of the discharge notice was

---

documentation beside point totals, including, among other things, correcting Mr. Campbell's rank. *See* Def.'s Mot. at 4 & n.4.

[5]In particular, Mr. Campbell argues that corrections made in 1972 were not properly reflected in later documentation.  Compl. ¶ 9.  Mr. Campbell also filed claims with this court's predecessors in 1978 and 1981, which claims involved periods of service in which he was on active duty for training. *See Campbell v. United States*, 228 Ct. Cl. 789 (1981) (claims for allowances); *Campbell v. United States*, 2 Cl. Ct. 247 (1983) (claim for pay and allowances).

[6]Mr. Campbell's service in 1967 was not counted towards his retirement calculation until the 2018 Statement.  AR 888.

meaningless, as he would still have the right "by law and regulation" to complete 20 years of service. Pl.'s Suppl. Compl. ¶ 3. He alleges that the Army mismanaged the administrative record and that their "incompetence and indifference" resulted in an unfair early discharge. Compl. ¶ 25.

Under the sanctuary statute, 10 U.S.C. § 12686, "a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system . . . may not be involuntarily released from that duty before he becomes eligible for that pay." Mr. Campbell contends that had the Army maintained correct records, he would not have been discharged and "would have stayed in the active reserves for at least 30 years." Compl. ¶ 25. Mr. Campbell seeks $775,220 in retirement back pay and future monthly retirement payments. Compl. at 8.

## STANDARDS FOR DECISION

### Motion to Dismiss

In any action, the plaintiff has the burden of establishing jurisdiction. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). In ruling on a motion to dismiss for lack of jurisdiction, the court must construe the allegations of the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The leniency afforded a *pro se* plaintiff with respect to formalities does not relieve *pro se* litigants of their obligation to satisfy jurisdictional requirements. *Kelley v. Secretary, United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

"[J]urisdiction under the Tucker Act exists if the statute, regulation, or constitutional provision that is the basis for the complaint 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained,' and is 'reasonably amenable to the reading that it mandates a right of recovery in damages." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983); *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003)) (additional citation omitted). "Every claim of which [this court] has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.

"Where th[is] court has not been granted jurisdiction to hear a claim, the case must be dismissed." *Treviño v. United States*, 113 Fed. Cl. 204, 207 (2013) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)); *see also* RCFC Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### Judgment on the Administrative Record

For motions under RCFC 52.1(c), *i.e.*, for judgment on an administrative record, "[t]he standards and criteria . . . vary depending upon the specific law to be applied in particular case." RCFC 52.1 Rules Committee Note, 2006 Adoption. In challenges to decisions by military boards, the scope of review "is limited to determining whether a decision of the . . . Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and

regulations." *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983)). The arbitrary and capricious standard "requires a reviewing court to sustain an action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

As a general matter, this court's role in military record cases is a limited one. It is "beyond the institutional competence of courts to review" the substance of decisions that have been left exclusively to the discretion of the military. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002); *see also Chappell v. Wallace*, 462 U.S. 296, 301 (1983) ("It is clear that the Constitution contemplated that the Legislative Branch has plenary control over rights, duties, and responsibilities in the framework of the military establishment, including regulations, procedures and remedies related to military discipline; and Congress and the courts have acted in conformity with that view.").

## ANALYSIS

### I.  *Subject Matter Jurisdiction—Rule 12(b)(1)*

Mr. Campbell's claim for retirement pay arguably matured when he turned 60 on July 14, 2000. *See* 10 U.S.C. § 12731(a)(1)-(2) ("A person is entitled, upon application, to retired pay" if they have "attained the eligibility age applicable under subsection (f)" and "performed at least 20 years of service computed under [S]ection 12732 of this title."). The recognized eligibility age under Subsection (f) "is 60 years of age," 10 U.S.C. § 12731(f), and Mr. Campbell alleges that he had 20 years of qualifying service at that time. Mr. Campbell first brought his claim to this court in August 2017.

This court's statute of limitations extends six years after a claim first accrues. *See* 28 U.S.C. § 2501; *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008). Recognizing this time constraint, Mr. Campbell has requested that the statute of limitations be tolled in light of his earlier attempts to secure administrative remedies. Mr. Campbell argues that he "made numerous attempts to correct the record through administrative action and appeals" well within the relevant statute of limitations for this court. Compl. ¶ 27. He further contends that because the 2018 Statement was the first signal that he was "eligible for retention to qualify for retirement," the statute of limitations began to run upon its completion. Pl.'s Suppl. Compl. ¶ 4.

"As regards military retired pay, a cause of action accrues on the date upon which plaintiff claims he became eligible for retired pay." *Brooks v. United States*, 70 Fed. Cl. 479, 484 (2006) (citing *Garcia v. United States*, 617 F.2d 218, 221 (Ct. Cl. 1980)). Mr. Campbell's claim, therefore, accrued on July 14, 2000, his sixtieth birthday. Mr. Campbell did not file a claim until seventeen years later, well outside the limitations period provided in 29 U.S.C. § 2501. And, in ordinary circumstances, Mr. Campbell's pursuit of remedies before the Army Board and the HR Command would not toll the statute of limitations. *See Martinez v. United States*, 333 U.S.C. 1295, 1312 (Fed. Cir. 2003) ("It is well settled that the statute of limitations for

Tucker Act claims is not tolled by the claimant's exercise of his right to seek permissive administrative review of his claim.").

Mr. Campbell implies that his allegedly wrongful discharge stopped the accrual of the statute of limitations because he learned his service constituted 18 years for retirement-benefit purposes upon receipt of the 2018 Statement. Pl.'s Suppl. Compl. ¶ 3; *see also* Def.'s Mot. at 11. But, "[i]n a military discharge case, [the Federal Circuit] and [this court's predecessor] have long held that the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge." *Martinez*, 333 F.3d at 1303. Because Mr. Campbell's service was terminated on January 27, 1983, this court could only have reviewed his wrongful-discharge claim if filed before January 27, 1989. Even considering that Mr. Campbell was not formally notified of his discharge in 1984, that does not preserve a related claim filed 34 years later.

In limited circumstances, the Federal Circuit has applied an "accrual suspension rule" where "the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (quoting *Martinez*, 333 F.3d at 1319). But "to achieve such suspension the plaintiff must either show that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was inherently unknowable at the accrual date." *Id.* (internal citations and quotations omitted). Mr. Campbell had personal knowledge of his service, and he has not provided any evidence that the Army purposely concealed its decisions from him.[7] Rather, he bases his argument for tolling the statute of limitations on the numerous attempts he made to remedy perceived errors in the administrative record. *See* Pl.'s Compl. ¶ 27; Pl.'s Suppl. Compl. ¶ 4. Mr. Campbell's inclusion of the 1982 account of his retirement points in his complaint emphasizes that in 1982 he became aware that the Army did not believe he was eligible for retirement, *see* Compl., Ex. A., and that this circumstance has continued thereafter. Accordingly, because Mr. Campbell's claims did not accrue during the six years before filed his complaint, this court does not have subject matter jurisdiction over his claim.

## II. Judgment on the Administrative Record—Rule 52.1

Given the very recent action by the Army's Human Resources Command, the government alternatively has asked the court to enter judgment in the government's favor based upon the administrative record. Mr. Campbell counters that request by endeavoring to show that he in fact has 20 years of qualifying service under the retirement-benefit point system prescribed in 10 U.S.C. §§ 12731-12732. Mr. Campbell's complaint in part addressed alleged miscalculation of points earned in his service between June 8, 1969 and June 7, 1980. *See generally* Compl. The 2018 Statement, however, determined that Mr. Campbell's service in

---

[7]Notwithstanding Mr. Campbell's assertion that he never received notice that he was denied a promotion and thus discharged from the Army Reserve, *see* Pl.'s Suppl. Compl. ¶ 3; AR 613, he acknowledged that denial in his complaint, Compl. ¶ 25 ("Plaintiff was due for promotion to the next higher grade of LTC in October 1982 based upon seven years in grade as a major, and this milestone was overlooked.").

those periods counted toward his retirement benefits. *See* AR 888. While earlier records may have miscalculated the points Mr. Campbell earned,[8] subsequent records have included points for those years in measuring Mr. Campbell's eligibility for retirement. AR 3, 14, 888.

Mr. Campbell is thus left to contend that the points for the two periods between June 8, 1980 and June 7, 1982 fail to properly account for his service. Compl. ¶ 17, 18, 19, 22.  Mr. Campbell provided two pay vouchers to the HR Command for their consideration in making calculations regarding the period from June 8, 1980 and June 7, 1981. AR 892-93.  Upon review, in the 2018 Statement, the HR Command increased the number of points Mr. Campbell earned in those two periods. AR 888.  The HR Command added 16 points to the 2018 Statement for the 80-81 year after review of the first pay voucher. AR 888.  The information provided by the second voucher for the 81-82 year had already been included in the 2015 Statement. AR 3. The HR Command did not find evidence of any further service in the period between June 8, 1981 and June 7, 1982. *See* AR 3, 888.

Mr. Campbell offers no evidence that the HR Command's actions in calculating retirement benefit points for the periods between June 8, 1980 and June 7, 1982 were arbitrary and capricious or unsupported by substantial evidence.  Retirement benefit points are based on documentation and determined by Army Regulations.  Army Regulation 140-185, ¶ 3-1; Army Regulation 600-8-104, ¶¶ 5-8.[9]  The documents attached to Mr. Campbell's complaint—all but one of which were already included in the administrative record—did not show that Mr. Campbell had earned more than 50 points towards retirement benefits in the two periods spanning 1980-1982.  AR 888.

Mr. Campbell's attempt to bring a claim under the sanctuary statute, 10 U.S.C. § 12686(a), is similarly unsuccessful.  That statute provides that "a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system . . . may not be involuntarily released from that duty before he becomes eligible for that pay." 10 U.S.C. § 12686(a).  To invoke Section 12686, a member of the reserve forces must be on active duty and within two years of eligibility for retirement benefits.  Active duty for training is not considered active duty for purposes of 10 U.S.C. § 12686. *See Wilson v. United States*, 917 F.2d 529, 535-36 (Fed. Cir. 1990).  Mr. Campbell's service between June 8, 1979 and June 7, 1980 was classified as active duty for training.  AR 72, 137, 440; Compl. ¶ 16 & Ex. R; *see also Campbell*, 2 Cl. Ct. at 248 (rejecting his claim for pay and allowance during active duty for training in 1981, taking into account a setoff attributable to an early release from an assigned duty in 1979).

---

[8]The 2014 Statement, 2015 Statement, and 2018 Statement differ in the points earned in the periods between June 8, 1969 and June 7, 1980.  Most of the points awarded in those periods had always been over 50, and thus counted towards Mr. Campbell's retirement pay.  In the 2018 Statement, only the change in point totals between June 8, 1976 and June 7, 1977, and June 8, 1977 and June 7, 1978 affected Mr. Campbell's eligibility for retirement benefits.

[9] Army Regulation 600-8-104 is available at: https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/r600_8_104.pdf (last visited July 5, 2018).

As a result, for the purposes of 10 U.S.C. § 12686, the period from June 8, 1979 to June 7, 1980, does not qualify as a year spent on active duty because Mr. Campbell's active duty was only for a limited part of that year-long period and then also was only for training.

Because Mr. Campbell has not demonstrated that the Army HR Command's determination of his retirement points was not based on substantial evidence or that 10 U.S.C. § 12686 applied, the HR Command's decision that he is not eligible for a reserve retirement is upheld.  The court thus also grants the government's motion for judgment on the administrative record under Rule 52.1(c).

## CONCLUSION

For the reasons stated, the government's motion to dismiss plaintiff's complaint and, in the alternative, its motion for judgment on the administrative record, are GRANTED.  The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

_____
Charles F. Lettow
Judge